1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                           EASTERN DISTRICT OF CALIFORNIA
10

| 11 | ANGEL RUIZ, | Case No. 1:20-cv-01100-EPG (PC) |
|---|---|---|
| 12 | Plaintiff, | SCREENING ORDER |
| 13 | v. | ORDER FOR PLAINTIFF TO: |
| 14 | JUNIOR FORTUNE, et al., | (1) FILE A FIRST AMENDED COMPLAINT; OR |
| 15 | Defendants. | |
| 16 | | (2) NOTIFY THE COURT THAT HE WANTS TO STAND ON HIS COMPLAINT |
| 17 | | (ECF NO. 1) |
| 18 | | THIRTY (30) DAY DEADLINE |

19       Angel Ruiz ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in
20 this action.  Plaintiff filed the complaint commencing this action on July 27, 2020.  (ECF No.
21 1).  The complaint is before this Court for screening.
22       The Court has reviewed Plaintiff's complaint and finds that Plaintiff has failed to state
23 any cognizable claims.  Plaintiff now has options as to how to move forward.  Plaintiff may file
24 an amended complaint if he believes that additional facts would state cognizable claim(s).  If
25 Plaintiff files an amended complaint, the Court will screen that amended complaint in due
26 course.  Or, Plaintiff may file a statement with the Court that he wants to stand on this
27 complaint and have it reviewed by a district judge, in which case the Court will issue findings
28 and recommendations to a district judge consistent with this order.

                                            1

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 12), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\
\\\
\\\

**II.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges as follows in his complaint:

The incidents occurred at Pleasant Valley State Prison.

On February 27, 2019, Plaintiff was suffering from chronic back pain and was unable to acquire medical assistance. Plaintiff had to go "man down" because he was in extreme pain to the point of paralysis and was feeling very ill. Ambulatory transport was required to the Clinical Treatment Center ("CTC") on this day, and on multiple prior occasions.

Plaintiff was housed in a cell on the first tier of Pleasant Valley Sate Prison's 1 building on C-yard, and had to rely on custody staff to unlock the door to his cell from the tower post inside the building to receive medical assistance for his serious medical needs. At approximately 7:40 a.m. Plaintiff experienced severe pain to his back and right leg while inside his cell. This led to the "man down" call for medical assistance from prison officials.

While Plaintiff was in this condition and in CTC, Plaintiff engaged in a heated debate with medical staff, pleading with them that something is seriously wrong. Both CTC medical staff and custody staff would smirk and say, "ahh come on man stop it, we know your [sic] faking!"

Defendant Physician Assistant Fortune and defendant Supervising Medical Doctor Ola would continuously dismiss Plaintiff's claims, as if he was exaggerating the pain he was feeling at that time. The pain continues through today.

Plaintiff asked for an MRI to be done months prior to the date of February 27, 2019. Defendant Fortune refused to request approval for an MRI until Plaintiff had completed eight weeks of physical therapy.

Defendant Fortune, instead of taking Plaintiff's request seriously and fully examining Plaintiff to be able to proceed with the correct and proper action for the right treatment to take place, presumed that only physical therapy was needed to solve Plaintiff's back pain.

Plaintiff's physical therapy began on January 9, 2019, and ended on March 20, 2019. Once defendant Fortune was satisfied with the assigned physical therapy, he then had the MRI approved.

Defendant Fortune's telling Plaintiff what kind of pain Plaintiff is feeling, and Plaintiff's consistent reply that it is something different, and defendant Fortune's consistent response that "I am not to be directing treatment," and defendant Fortune's misdiagnosing Plaintiff to the level of malpractice, is defendant Fortune's way of giving treatment. Defendant Fortune does not know what he is treating.

Plaintiff then received the MRI. On March 25, 2019, immediately following the MRI results, Plaintiff was admitted to Mercy Hospital Unit.

Medical staff's willful deliberate indifference to Plaintiff's serious medical needs, and failure to properly treat medical alerts, resulted in further permanent limited mobility and a lifetime of chronic pain and suffering.

Prison medical staff in their initial encounter with Plaintiff had the opportunity to provide adequate treatment, but willfully and wantonly refused to take Plaintiff seriously, making outlandish defaming remarks that Plaintiff was exaggerating his claims of extreme pain.

Furthermore, Defendants refuse to take into account Mercy Hospital Specialists' diagnosis of Plaintiff's testing positive for Cocci, stating, "[w]e believe it's a false positive." Plaintiff believes Defendants were aware of it being Valley Fever prior to Plaintiff being sent to Mercy Hospital.

As can be seen from Plaintiff's medical records, it was found out to be a very serious infection of Cocci in Plaintiff's spine, and deterioration in Plaintiff's neck.

After Plaintiff's admittance and testing showing positive at Mercy Hospital on March 20, 2019, and March 21, 2019, "for Ig M8 Ig G," Plaintiff was put on 400mg of fluconazole, 1000 mg Ceftriaxone (I.V.) drip, and 1250mg Vancomycin (I.V.) drip, and told by the doctor that he would be on fluconazole indefinitely.

Even after Plaintiff's admittance to Mercy Hospital, the treatment Plaintiff received there, and Plaintiff testing positive for Cocci, defendants Ola, Fortune, Pocholo, Gonzales, Onyeje, and Gates deliberately and maliciously continue to keep alive an incorrect belief that Plaintiff received a false positive for coccidioidomycosis.

Defendants Fortune and Ola were not only disregarding Plaintiff's pain, but laughing and making statements like "I don't know why they have you on this medication if you are negative."

Defendants Fortune and Ola had also prescribed a medication for pain called Nortriptyline, a psychiatric medication/heat-med that is in the Tricyclic family. It is a secondary amine tricyclic Nortriptyline (Aventyl, Pamelor), which Plaintiff refused to take once he found out it was a psychiatric medication.

Defendants continue to use the same method of testing, by blood, that produces a negative result.

On June 12, 2019, Plaintiff filed a medical 602 complaining about the inadequate medical treatment. Plaintiff was interviewed by defendant Gonzales for the appeal on July 30, 2019, and received no positive remedy to the prison medical staff's actions that caused Plaintiff further injury for the rest of his life.

Defendant Gates, the Chief of Appeals, made the determination that adequate medical treatment was given, even though documents show it was not. Additionally, defendant Gates delayed Plaintiff's appeal by sending it to San Quentin State Prison medical providers that had no involvement with the actions of Pleasant Valley State Prison's medical staff.

Plaintiff now has to take fluconazole (Valley Fever medication) indefinitely. In fact, on August 20, 2019, Dr. Conanan told Plaintiff to be sure to take his medications and not to miss a dose because the Valley Fever can spread to Plaintiff's brain and even kill him. The medication only controls the Valley Fever, and in serious cases such as Plaintiff's, there is no cure.

Defendants Fortune, Ola, Pocholo, Gonzales, Onyeje, and Gates failed to properly and adequately treat Plaintiff by acting with deliberate indifference towards Plaintiff's serious medical needs.[1]

---

[1] Plaintiff attached over fifty pages of exhibits to his complaint. The exhibits do not appear to be in order, and some are labeled with numbers while others are labeled with letters. While Plaintiff may attach and cite to exhibits, Plaintiff should include all relevant factual allegations in his complaint.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a

prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff has sufficiently alleged that he has a serious medical condition. However, the allegations in the complaint, even if true, do not sufficiently show that any defendant was deliberately indifferent to Plaintiff's condition under the legal standards above.

First, Plaintiff complains about the treatment he received for his back pain. Plaintiff

alleged that certain defendants did not believe his back pain was as serious as he believed it to be. Even if this were true, it does not show deliberate indifference, because Plaintiff must sufficiently allege that Defendants *knew of* and disregarded a risk to Plaintiff's health. If Defendants did not believe Plaintiff's back pain was serious, Defendants could not be deliberately indifferent to that pain.

Moreover, and more importantly, Plaintiff was provided with treatment for his back pain. Plaintiff received physical therapy, and when that did not work, an MRI was approved. Immediately following the MRI results, Plaintiff was admitted to Mercy Hospital Unit. After returning from the hospital, it appears that Plaintiff was prescribed Nortriptyline for his pain. Additionally, Plaintiff is currently taking fluconazole for Valley Fever. While Plaintiff believes he should have received the MRI earlier, and while Plaintiff may in the end have been correct, a difference of opinion regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.

Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against any defendant based on the treatment he received for his back pain.

Plaintiff also complains that, after he returned from Mercy Hospital, certain defendants believed that he was incorrectly diagnosed with Valley Fever by staff at Mercy Hospital. According to Plaintiff, certain defendants stated it was a false positive. This belief appears to have come from blood tests that were conducted on Plaintiff, which came back negative for Valley Fever. While it appears that the blood tests were wrong and that Plaintiff does in fact have Valley Fever, there is no indication that any defendant knew that Plaintiff had Valley Fever but failed to provide treatment.[2]

Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against any defendant based on the treatment he received (or failed to receive) for Valley Fever.

If Plaintiff chooses to amend his complaint, he should explain if any medical

---

[2] Plaintiff alleged, in a conclusory fashion, that Defendants were aware that he had Valley Fever prior to the date he was sent to the hospital, but there are no factual allegations in the complaint to support this conclusory assertion.

professional believed he truly needed different care, yet failed to provide that care.

### C. Medical Malpractice

It is not clear, but it appears that Plaintiff might be attempting to bring a state law medical malpractice claim, and Plaintiff's allegations may state a claim for medical malpractice. However, to the extent that Plaintiff is bringing a medical malpractice claim, he has failed to state a claim because he has not pled compliance with California's Government Claims Act.[3] California's Government Claims Act requires that a claim against the State[4] or its employees "relating to a cause of action for death or for injury to person" be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

If Plaintiff chooses to amend his complaint, he may assert state law claims. However, he must plead compliance with the Government Claims Act. Moreover, if the Court does not find any federal claims, his state law claims may be dismissed without prejudice for lack of jurisdiction.

### D. First Amendment Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

---

[3] This Act was formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[4] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

10

protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

There are no facts alleged suggesting that any defendant retaliated against Plaintiff for engaging in protected conduct. Accordingly, Plaintiff has failed to state a retaliation claim.

### E. Fourteenth Amendment Equal Protection Clause

The equal protection clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

There are no facts alleged suggesting that any defendant intentionally discriminated against Plaintiff based on his membership in a protected class or that similarly situated

individuals were intentionally treated different. Accordingly, Plaintiff has failed to state an equal protection claim.

### F. Processing of Appeals

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

As Plaintiff does not have a liberty interest in the processing of his appeals, Plaintiff has failed to state a Fourteenth Amendment due process claim based on his allegations that his appeals were not appropriately processed.

### IV.   CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

If Plaintiff chooses to file an amended complaint, the amended complaint must allege violations under the law as discussed above. Specifically, Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff should note that although he has been given the opportunity to amend, it is not

for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to the district judge recommending dismissal of the action consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within thirty (30) days from the date of service of this order, Plaintiff shall either:

    a. File a First Amended Complaint; or

    b. Notify the Court in writing that he wants to stand on his complaint.

2. Should Plaintiff choose to amend his complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:20-cv-01100-EPG; and

3. Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   **October 6, 2020**           /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE